IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
AT NASHVILLE
Assigned on Briefs November 12, 2015

**JOHN DAVID LUTHER v. STATE OF TENNESSEE**

**Direct Appeal from the Criminal Court for Davidson County**
**No. 2008-C-2459     Monte Watkins, Judge**

_____

**No. M2014-02465-CCA-R3-PC – Filed March 17, 2016**

_____

The Petitioner, John David Luther, appeals the Davidson County Criminal Court's denial of his petition for post-conviction relief from his convictions of voluntary manslaughter, aggravated assault, and reckless aggravated assault, and resulting effective seventeen-year sentence. On appeal, the Petitioner contends that he received the ineffective assistance of trial and appellate counsel. Based upon the record and the parties' briefs, we affirm the judgment of the post-conviction court.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Criminal Court is Affirmed.**

NORMA MCGEE OGLE, J., delivered the opinion of the court, in which CAMILLE R. MCMULLEN, and ROBERT L. HOLLOWAY, JR., JJ., joined.

Richard C. Strong, Nashville, Tennessee, for the appellant, John David Luther.

Herbert H. Slatery III, Attorney General and Reporter; Ahmed A. Safeeullah, Assistant Attorney General; Glenn R. Funk, District Attorney General; and Roger Moore, Assistant District Attorney General, for the appellee, State of Tennessee.

**OPINION**

**I.  Factual Background**

In August 2008, the Davidson County Grand Jury indicted the Petitioner for count one, the attempted first degree murder of Daniel Harding; count two, the aggravated assault of Harding; and count three, the aggravated assault of Patrick Lamar. We glean the following relevant facts from this court's opinion of the Petitioner's direct appeal of his convictions:  On the night of May 25, 2008, Harding, Lamar, Corina Pinya, Niki

Curtis, and Prince Speights were at Greenland's Pub. State v. John David Luther, No. M2010-01237-CCA-R3-CD, 2011 WL 6743283, at *1 (Tenn. Crim. App. at Nashville, Dec. 22, 2011), perm. to appeal denied, (Tenn. 2012). The group was on the pub's outside deck when the Petitioner, who had been inside the pub, came onto the deck and said something to the effect of "'he did not like white people that dressed like n***ers.'" See id. Harding asked the Petitioner to go back inside the pub, and the Petitioner did so. Id. However, the Petitioner returned to the deck, and Harding again asked him to go inside. Id. The Petitioner went inside but came onto the deck a third time. Id. At that point, the Petitioner and Harding began fighting. Id. During the fight, the Petitioner stabbed Harding in the neck, cutting his carotid artery and jugular vein. Id. at *3. Lamar, who tried to break up the fight, received a cut on his forearm that required three stitches. Id. at *1.

Officer Brad Rumbley of the Metropolitan Nashville Police Department responded to the scene and found several people attending to Harding just inside the pub's front door. Id. at *2. The Petitioner was lying on his back on the deck and was "'mumbling his words [and] said that he got beat up.'" Id. Detective Fredrick Sulfridge, who spoke with the Petitioner at the hospital, testified that the Petitioner appeared "'pretty drunk'" and that the Petitioner said about Harding, "'"F**k that n***er."'" Id. at *3. When the detective reminded the Petitioner that Harding was white, the Petitioner stated, "'"Well, f**k that n***er lover."'" Id. Detective Sulfridge said that he noticed an abrasion under the Petitioner's left eye but that his investigation led him to believe the Petitioner was the primary aggressor. Id.

The Petitioner testified that the fight began when Harding "'started hitting [him] in the back of the head.'" Id. The Petitioner pulled his knife out of his pocket and "'just wanted [Harding] to stop beating on [him].'" Id. Someone then hit the Petitioner on the back of his head, knocking him out. Id. The Petitioner said that he did not remember talking with Detective Sulfridge at the hospital but that he may have made those statements to the officer due to the alcohol he had consumed and the medication he had received at the hospital. Id.

The jury convicted the Petitioner of attempted voluntary manslaughter, a Class D felony, as a lesser-included offense of attempted first degree murder; the aggravated assault of Harding, a Class C felony; and the reckless aggravated assault of Lamar, a Class D felony, as a lesser-included offense of aggravated assault. After a sentencing hearing, the trial court merged the conviction of attempted voluntary manslaughter into the conviction of aggravated assault and sentenced the Petitioner as a Range II, multiple offender to ten years. The court sentenced the Petitioner to seven years for the conviction of reckless aggravated assault and ordered that it be served consecutively to the ten-year sentence for a total effective sentence of seventeen years in confinement.

The Petitioner filed a direct appeal of his convictions to this court, raising several issues, including that the trial court erred by refusing to give a jury instruction on voluntary intoxication and by imposing consecutive sentencing. Id. at *1. This court affirmed the Petitioner's convictions and ruled that the trial court properly ordered consecutive sentencing based upon a DUI conviction in 1986 and "several convictions for offenses during the 1970s." Id. at *8.

After our supreme court denied the Petitioner's application for permission to appeal, he filed a timely petition for post-conviction relief, alleging that he received the ineffective assistance of trial counsel. The post-conviction court appointed counsel, and counsel filed an amended petition. In the amended petition, post-conviction counsel alleged that trial counsel was ineffective, in pertinent part, for failing to present favorable witnesses, such as Roy McLaughlin, at trial and by allowing the State to refer to Harding as "Deputy Harding" throughout the trial. Counsel also alleged in the amended petition that the Petitioner received the ineffective assistance of appellate counsel because counsel failed to raise on direct appeal of the Petitioner's convictions that the seventeen-year sentence was excessive.

At the evidentiary hearing, trial counsel testified that he visited the Petitioner in jail but that he did not remember how many times. He said that he typically did not give discovery to his clients in jail but that the Petitioner received a copy of discovery "at some point." An investigator spoke with Roy McLaughlin, who was incarcerated with the Petitioner. Counsel acknowledged that McLaughlin allegedly had been contacted by someone who wanted McLaughlin to harm the Petitioner in jail because one of the victims, Harding, was a deputy sheriff. However, McLaughlin's information was not exculpatory to the Petitioner because it was irrelevant to the fight at the pub. Counsel also did not call Niki Curtis or Corina Pinya to testify. Counsel said that one of them "was going to be a very hostile witness" to the defense and that the other "wasn't gonna help us." Both were present in the courtroom during the Petitioner's trial, and they did not testify for the State.

Counsel testified that the defense's theory was that the Petitioner stabbed Harding in self-defense. The Petitioner "sustained some serious injuries," including contusions, lacerations, and cracked teeth, and was transported to the hospital by ambulance. Counsel questioned witnesses about the Petitioner's injuries, and police officers testified about the injuries on cross-examination. Counsel even got Harding to admit at trial that he hit the Petitioner first. Harding claimed, though, that he struck the Petitioner because he saw the Petitioner with "something" and had to defend himself. Counsel also raised the issue of voluntary intoxication. That defense was not particularly useful, though,

because the Petitioner took the stand "to testify that he knew exactly what was going on at the time of the event."

Counsel acknowledged that he did not object to the State's referring to Harding as a "deputy" even though Harding was not on duty at the time of the fight. Counsel explained that he did not object because Harding testified about his job and "people are often called by their title." Post-conviction counsel asked if trial counsel thought the State's referring to the victim as "deputy" was prejudicial, and counsel answered, "I'm not sure." The length of the Petitioner's effective sentence was based upon his criminal record. The Petitioner was a "Range Three or career" offender, and counsel did not object to the length of his sentences.

On cross-examination, counsel testified that his law practice had focused on criminal defense for the past twelve to thirteen years and that the Petitioner's mother retained him. Counsel acknowledged that the State's witnesses said the Petitioner appeared to be intoxicated but that the Petitioner claimed "two rum and cokes wasn't gonna make him drunk." Counsel said that he was prepared for the State's case and that he did not think he could have done anything differently at trial. The conviction of attempted voluntary manslaughter was a "win" for the defense, and the Petitioner was thankful because he knew counsel "had tried really hard." However, that appreciation "went away quickly" after sentencing. Counsel said that the severity of Harding's injury and "possibly the unnecessary chain of events" affected the length of the Petitioner's sentences.

The Petitioner testified that he asked trial counsel to have Curtis and Pinya testify at trial. Counsel did not tell him that the witnesses were hostile, and the Petitioner did not see them in the courtroom during the trial. The Petitioner said that he did not know McLaughlin until they were in jail together. The Petitioner learned that McLaughlin conspired with someone to harm him and requested that counsel have McLaughlin testify at trial. Counsel told the Petitioner not to worry and that he was "'taking care of it.'" Counsel never visited the Petitioner in jail, but counsel's "paralegals" came to the jail twice. However, they would not discuss the Petitioner's case with him and said he would have to talk with counsel about it. The Petitioner also did not receive discovery materials until appellate counsel gave them to him.

The Petitioner testified that the State made him a plea offer but that he did not accept it because "[if] the man [had not] jumped on me, this would not have happened." Harding was "half" the Petitioner's age,[1] was "in very good shape," and did not have a reason to "jump on" the Petitioner. Counsel did not discuss a self-defense theory with the Petitioner until the State closed its case-in-chief and did not prepare the Petitioner for his

---

[1] The record reflects that the Petitioner was fifty-four years old at the time of the offenses.

testimony. The Petitioner saw counsel four or five times in court before trial, but their meetings lasted "[j]ust a few minutes" and they "didn't really discuss [the] case." After the trial, the Petitioner realized that the State's being allowed to refer to Harding as "deputy" prejudiced him and that counsel should have objected. The Petitioner downplayed his intoxication during his testimony, which he explained was "[s]ort of a natural thing for a drunk to do." He said that the men in the pub "all started beating on [him]" and that he tried to defend himself. Counsel did not investigate or prepare for trial. Had counsel done so, he would have known that the Petitioner "was only in that situation in self-defense." Counsel also was not prepared for the sentencing hearing and did not argue any mitigating factors.

On cross-examination, the Petitioner acknowledged that he gave his version of the events to the jury. He also acknowledged that the witnesses he wanted to testify at trial were not at the post-conviction evidentiary hearing.

The post-conviction court filed a written order, denying the petition for post-conviction relief. In the order, the court found as follows:

> At the evidentiary hearing, trial counsel testified that he met with the defendant on numerous occasions and advised him of the evidence against him. Further, the defendant was advised of the likelihood of conviction and the range of punishment. . . . Furthermore, trial counsel advised that the strategy to call for witnesses and the cross examination of witnesses as well as the issues that were raised in the motion for new trial as well as on appeal were those in which he deemed necessary and appropriate in light of the issues raised prior to and during trial.
>
> Petitioner has failed to demonstrate by clear and convincing evidence ineffective assistance of counsel in violation of a constitutional right to render his conviction and sentence void or voidable under the Post Conviction Relief Act. The Court does not find the petitioner's testimony to be credible. Accordingly, the Court finds that Petitioner has failed to show that he was prejudiced by counsel's allegedly deficient conduct. Strickland, 466 U.S. at 694.

## II. Analysis

The Petitioner contends that trial counsel was ineffective for failing to object to the State's repeated reference to Harding as "Deputy Harding" in front of the jury, that appellate counsel was ineffective for failing to raise the issue of his excessive sentences on appeal, and that we should remand the case to the post-conviction court because the court failed to address those claims.[2] The State argues that the post-conviction court implicitly found that counsel was not ineffective in any way and that we should affirm the court's denial of the petition because the court accredited counsel, who testified that the Petitioner was not prejudiced by the State's referring to Harding by his title and that the Petitioner's sentences were lengthy due to his prior criminal history and the severity of Harding's injuries. We conclude that we can address the Petitioner's ineffective assistance of counsel claims and that he is not entitled to relief.

To be successful in a claim for post-conviction relief, a petitioner must prove the factual allegations contained in the post-conviction petition by clear and convincing evidence. See Tenn. Code Ann. § 40-30-110(f). "'Clear and convincing evidence means evidence in which there is no serious or substantial doubt about the correctness of the conclusions drawn from the evidence.'" State v. Holder, 15 S.W.3d 905, 911 (Tenn. Crim. App. 1999) (quoting Hodges v. S.C. Toof & Co., 833 S.W.2d 896, 901 n.3 (Tenn. 1992)). Issues regarding the credibility of witnesses, the weight and value to be accorded their testimony, and the factual questions raised by the evidence adduced at trial are to be resolved by the post-conviction court as the trier of fact. See Henley v. State, 960 S.W.2d 572, 579 (Tenn. 1997). Therefore, the post-conviction court's findings of fact are entitled to substantial deference on appeal unless the evidence preponderates against those findings. See Fields v. State, 40 S.W.3d 450, 458 (Tenn. 2001).

A claim of ineffective assistance of counsel is a mixed question of law and fact. See State v. Burns, 6 S.W.3d 453, 461 (Tenn. 1999). We will review the post-conviction court's findings of fact de novo with a presumption that those findings are correct. See Fields, 40 S.W.3d at 458. However, we will review the post-conviction court's conclusions of law purely de novo. Id.

When a petitioner seeks post-conviction relief on the basis of ineffective assistance of counsel, "the petitioner bears the burden of proving both that counsel's performance was deficient and that the deficiency prejudiced the defense." Goad v.

---

[2] The Petitioner also contends that he received the ineffective assistance of trial counsel because counsel failed to call McLaughlin, Curtis, and Pinya as witnesses at trial. However, the Petitioner acknowledges that he cannot prevail on this claim because the witnesses failed to testify at the evidentiary hearing. See Black v. State, 794 S.W.2d 752, 757 (Tenn. Crim. App. 1990) (providing that this court may not speculate as to the content of a witness's testimony).

State, 938 S.W.2d 363, 369 (Tenn. 1996) (citing Strickland v. Washington, 466 U.S. 668, 687 (1984)). To establish deficient performance, the petitioner must show that counsel's performance was below "the range of competence demanded of attorneys in criminal cases." Baxter v. Rose, 523 S.W.2d 930, 936 (Tenn. 1975). To establish prejudice, the petitioner must show that "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome." Strickland, 466 U.S. at 694. Generally, [b]ecause a petitioner must establish both prongs of the test, a failure to prove either deficiency or prejudice provides a sufficient basis to deny relief on the ineffective assistance claim. Indeed, a court need not address the components in any particular order or even address both if the [petitioner] makes an insufficient showing of one component. Goad, 938 S.W.2d at 370 (citing Strickland, 466 U.S. at 697).

Turning to the instant case, the post-conviction court should have addressed the issues raised in the petition and at the evidentiary hearing in its written order denying post-conviction relief. Regardless, we agree with the State that the court implicitly found that counsel was not ineffective in any regard. As to the Petitioner's claim that trial counsel was ineffective for not objecting to the State's addressing Harding as "Deputy Harding" in front of the jury, the fact that Harding was a sheriff's deputy was irrelevant to this case, and Harding did not testify at trial in his official capacity as an officer. Therefore, we agree with the Petitioner that trial counsel should have objected to the State's referring to the witness as "Deputy Harding." However, counsel testified at the hearing that he did not know if the State's referring to the witness by his police title prejudiced the Petitioner and, in fact, the Petitioner has failed to demonstrate prejudice. The jury's finding the Petitioner guilty of the lesser-included offenses of attempted voluntary manslaughter and reckless aggravated assault demonstrates that the jury carefully considered the elements of the charged offenses.

As to the Petitioner's claim that appellate counsel was ineffective for failing to raise the issue of excessive sentencing on direct appeal, we note that the Petitioner failed to have appellate counsel testify at the evidentiary hearing. In any event, the Petitioner does not explain why his effective seventeen-year sentence is excessive. The Petitioner was a Range II offender and was sentenced within the appropriate ranges of punishment for the offenses. Moreover, this court held in its direct appeal opinion that the trial court properly ordered consecutive sentencing based upon the Petitioner's extensive criminal history. Thus, nothing indicates that counsel was deficient for failing to raise the sentencing issue on appeal or that the Petitioner was prejudiced by counsel's failure to do so. Thus, we conclude that he is not entitled to relief.

## III.  Conclusion

Based upon the record and the parties' briefs, we affirm the judgment of the post-conviction court.


_____
NORMA MCGEE OGLE, JUDGE